UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TRI-NATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12CV209 SNLJ |
| ) | |
| LARRY D. YELDER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the cross motions for summary judgment filed by plaintiff and defendant Canal Insurance Company. Central to both motions is the issue of whether the MCS-90 endorsement attached to the Canal Insurance Company policy provides coverage for plaintiff's judgment against Canal's insureds. All responsive pleadings have been filed or the time for doing so has expired. This matter is now ripe for disposition.

**I.  Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). "Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." *Allen v. Missouri*, 4:11CV2224 JAR, 2013 WL 2156259, at *3 (E.D. Mo. May 17, 2013) (citing *Husinga v. Federal–Mogul Ignition Co.,* 519 F.Supp.2d 929, 942 (S.D. Iowa 2007)).

**II.    Facts**

The following undisputed facts apply to both motions. On June 14, 2007, defendant Larry D. Yelder, an employee of defendant Yelder-N-Son Trucking, Inc. (Yelder defendants) was driving a 2001 Peterbilt tractor trailer in Missouri and collided with another truck owned by plaintiff Tri-National, Inc. The Tri-National truck was damaged in the accident. At the time of the accident, Tri-National was insured by Harco Insurance Company (Harco) and the Yelder defendants were insured by Canal Insurance Company (Canal). Tri-National made a claim as a result of the accident in the amount of

$91,100, which was paid by Harco and thus, entitled Harco to a right of subrogation.[1]
Tri-National filed a lawsuit in state court against the Yelder defendants and obtained a default judgment against them in the amount of $91,100. Subsequently, Tri-National filed the petition for equitable garnishment in this case in state court against the Yelder defendants and Canal, as their insured. This equitable garnishment case was removed to this Court based on diversity jurisdiction.

At the time of the accident, the 2001 Peterbilt was not included as a scheduled vehicle in the policy declarations. Canal filed a declaratory judgment action in the United States District Court for the Middle District of Alabama against the Yelder defendants and Harco. In the declaratory judgment action, Canal sought a declaration that there was no coverage under the policy because the truck was not an insured vehicle and because of the Yelder defendants failure to cooperate and failure to report the lawsuit to Canal. The Alabama District Court issued an Order finding that Canal did not have a duty to defend or indemnify the Yelder defendants for the June 14, 2007 accident. Canal also sought a declaration that Harco was not entitled to any coverage for its subrogation

---

[1] Under Missouri law, "[s]ubrogation . . . arises by operation of law (in the casualty insurance context) when the insurance company under its contract obligation pays all or a part of the property damage incurred by its insured. The legal title to the cause of action remains in the insured. The exclusive right to sue for the entire loss remains with the insured though he will hold the proceeds for the insurer." *Liberty Mut. Fire Ins. Co. v. Centimark Corp.*, 4:08CV230 DJS, 2008 WL 5423440, at *3 (E.D. Mo. Dec. 29, 2008) (quoting *Hagar v. Wright Tire & Appliance, Inc.*, 33 S.W.3d 605, 610 (Mo. App. W.D. 2000)); *see also Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. banc 2002) ("By paying the insured, the insurer has a right to subrogation. The exclusive right to pursue the tortfeasor remains with the insured, which holds the proceeds for the insurer.").

3

claim pursuant to the MCS-90 endorsement attached to the Canal policy. This issue was not ruled upon by the Court and Harco was later dismissed.

A standard MCS-90 endorsement is attached to the Canal policy. The MCS-90 endorsement states that the Canal policy is "primary," and that the limits of recovery under the MCS-90 endorsement are $750,000, the federally mandated minimum for the type of vehicles insured under the policy. The endorsement provides:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from the negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of
> 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance is afforded for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as their cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in this policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

### III.  Discussion

In this case the underlying facts for the motions are the same and are undisputed. The parties' dispute is as to the effect and operation of the law in light of those facts. The motions address the same issue – whether the MCS-90 endorsement attached to the Canal policy provides coverage for plaintiff's judgment against Canal's insureds. Canal has filed its motion arguing there is no coverage because plaintiff was compensated by its own insurer and, therefore, the MCS-90 endorsement is not triggered. Plaintiff has filed its motion arguing there is coverage because the motor carrier's underlying insurance policy did not provide coverage and the motor carrier did not have other insurance coverage, thus triggering coverage under the MCS-90 endorsement. The issue before this Court is one of law and summary judgment is the proper remedy for resolving the dispute between these parties.

In its motion, Canal contends that there is no coverage under the policy[2] or the

---

[2] Plaintiff's complaint included a claim under the Yelder defendants' policy alleging that the Yelder defendants had complied with all conditions precedent of the policy and demand was being made for payment under the policy. Canal argues that it is entitled to judgment as a matter of law on that claim because the issue of whether it had a duty to defendant or indemnify the Yelder defendants had been decided by the United States District Court for the Middle District of Alabama. In the summary judgment documents, plaintiff abandons its claim under the policy and, as a result, Canal's arguments on that issue are not addressed.

5

MCS-90 endorsement. Canal alleges that the MCS-90 endorsement exists only for the benefit of an uncompensated injured member of the public and, as a result, the endorsement is not triggered here because Tri-National was fully compensated by Harco. Canal argues that the MCS-90 endorsement does not operate to insure compensated losses or to reimburse other insurers. In its response to Canal's motion, and in its motion, Tri-National does not argue that Canal has any obligation under the policy but instead focuses on the MCS-90 endorsement. Tri-National contends that the MCS-90 endorsement creates absolute liability on the part of the motor carrier insurer to satisfy the default judgment against its insureds up to the policy limits on the endorsement.

Additionally, Canal argues that Harco is the real party in interest. Canal contends this is significant because the MCS-90 endorsement cannot be invoked for the benefit of another insurer. Further, Canal argues that because Harco is the real party in interest, plaintiff's claim is barred by res judicata, judicial estoppel, and/or collateral estoppel as a result of the Alabama litigation. In that litigation, Canal sought a declaration that Harco was not entitled to any coverage for its subrogation claim pursuant to the MCS-90 endorsement attached to the Canal policy. However, that issue was not ruled upon by the Court and Harco was later dismissed.[3] Tri-National was not a party to the Alabama litigation.

---

[3] Canal contends that Harco was dismissed because Harco's attorney represented to the Court that Harco did not intend to seek any recovery from Canal for payments made as a result of the accident. Canal argues that this is inconsistent with the claim made in this case. A review of the partial transcript of an in-chambers pretrial conference in the Alabama case, in the record before this Court, evidences that Harco's attorney stated that if Tri-National obtained judgment against the Yelder defendants, it "would be Tri-National who would go after Canal, not Harco." This Court does not find an inconsistency as it is Tri-National who has filed suit against Canal.

This matter is an equitable garnishment action brought under Missouri law pursuant to section 379.200 RSMo. Only the judgment creditor, in this case Tri-National, can proceed under section 379.200 RSMo. Accordingly, this Court rejects Canal's argument that Harco is the real party in interest and, correspondingly, the argument that the claim is barred by res judicata, judicial estoppel, and/or collateral estoppel. Indisputably, Tri-National holds a judgment against Canal's insureds that has not been satisfied. The issue is whether Canal is required to pay the judgment pursuant to the MCS-90 endorsement.

Interpretation of the MCS-90 endorsement is a matter of federal law. *See Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 875 (10th Cir. 2009); *Canal Ins. Co. v. Distribution Services*, 320 F.3d 488, 492 (4th Cir. 2003). "The main purpose of the MCS–90 endorsement and the underlying financial responsibility regulations is to ensure that the public is adequately protected from the risks created by a motor carrier's operations and to ensure the collectability of a judgment against the motor carrier." *Great West Cas. Co. v. General Cas. Co. of Wisconsin*, 734 F.Supp.2d 718, 734 (D. Minn. 2010); *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 875 (10th Cir. 2009). "Accordingly, the MCS-90 endorsement creates a suretyship by the insurer to protect the public when the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured." *Canal Ins. Co. v. Distribution Services, Inc.*, 320 F.3d 488, 490 (4th Cir. 2003); *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 875 (10th Cir. 2009).

7

It is indisputable that Canal would be obligated to pay Tri-National under the MCS-90 endorsement as an injured member of the public if Harco had not compensated its insured. Canal contends that because Harco compensated Tri-National, this matter is a dispute among insurers and the MCS-90 endorsement does not provide coverage. Canal posits the issue as one of allocation of loss among insurers. However, the cases cited by Canal are distinguishable from the circumstances of this case. Further, the cases do not support Canal's position that the insurer for the injured party should bear the cost of compensating its insured for its loss caused by the motor carrier.

The cases cited by Canal involve disputes between the defendant motor carrier and its insurer(s)[4] over which one or more must bear the cost of compensating the party injured by the motor carrier. None involve a dispute between an insurer for the motor carrier versus an insurer for the injured party as to who must bear the cost of compensating the party injured by the motor carrier. *See Canal Ins. Co. v. Distribution Services, Inc.,* 320 F.3d 488 (4th Cir. 2003) (dispute between insurers for trucking company and leasing company from which trucker leased the truck involved in the accident); *John Deere Ins. Co. v. Nueva,* 229 F.3d 853 (9th Cir. 2000) (dispute between insured motor carrier and its liability insurer); *John Deere Ins. Co. v. Truckin' U.S.A*, 122 F.3d 270 (5th Cir. 1997) (dispute between insurers for trucking company and owner of truck involved in fatal collision); *Great West Cas. v. General Cas. Co. of Wisconsin*, 734 F.Supp.2d 718 (D. Minn. 2010) (dispute between insurers for owner of trailer); *Carolina

---

[4] In some cases, there are different insurers for the driver, the tractor truck, the trailer, and/or there may be multiple insurers covering the driver, the tractor truck, or the trailer.

8

*Cas. Ins. Co. v. Underwriters, Ins. Co.*, 569 F.2d 304 (5th Cir. 1978) (dispute between insurer for owner of tractor and trailer and insurer for the lessee and sublessee); *National Independent Truckers Ins. Co. v. Gadway*, 860 F.Supp.2d 946 (D. Neb. 2012) (dispute between insured motor carrier and his liability insurer); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Maine Ins. Co.*, 722 F.2d 1400 (8th Cir. 1983) (dispute between insurer for tractor trailer owner and insurer for lessee); *National Indem. Co. v. Ozark Mountain Sightseeing, Inc.*, 46 Fed. Appx. 864 (8th Cir. 2002) (dispute between insurer for bus company and insurer for driver and owner of bus).

Plaintiff, on the other hand, has cited a case in support of its position that involved a dispute between the insurer for the injured party and the insurer of the negligent party, *Global Hawk v. Century-National Ins.*, 203 Cal.App.4th 1458 (1st Dist. 2012). In *Global Hawk,* Century-National paid its own insured who was damaged by Global Hawk's insured. *Global Hawk*, 203 Cal.App.4th at 1461-63. Global Hawk denied coverage based on the fact that the vehicle involved was not on the accepted schedule of insured vehicles. Century-National then sued Global Hawk for reimbursement.[5] *Id.* The court held that Century-National was entitled to reimbursement through the MCS-90 endorsement.

The *Global Hawk* court determined that the coverage provided by Century-National to its injured insured is not "other insurance" available to satisfy the judgment

---

[5] Under California's Insurance Code and Century-National's subrogation agreement with its insured, Century-National stood in the shoes of its insured and was entitled to sue the tortfeasor and the tortfeasor's employer and its insurer, Global Hawk, for its insured's injuries and for reimbursement of the UM benefits it paid to its insured. *Global Hawk*, 203 Cal.App.4th at 1467.

such that the MCS-90 endorsement would not be triggered. *Id.* at 1465-66. The court rejected Global Hawk's argument that Century-National was an "other insurer" within the meaning of the MCS-90 endorsement. *Id.* Instead, "other insurer" within the meaning of the MCS-90 endorsement "means any other insurer of the tortfeasor motor carrier, not the insurer of the person injured by the motor carrier." *Id.* The court held that "when an injured party obtains a negligence judgment against a motor carrier, an insurer's obligation under the MCS–90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) *the [motor] carrier's other insurance coverage* is either insufficient to meet the federally-mandated minimums or non-existent." *Id.* at 1466 (emphasis in original). The court declared that "[a]ny other interpretation – for instance, one which places the onus of insuring against accidents caused by interstate truckers on the accident victims – would defeat the purpose of the regulations adopted to implement the FMCSA, which is to 'assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers.'" *Id.* (quoting *T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.* (5th Cir.2001) 242 F.3d 667, 672).

Similarly, in this case, Tri-National was the injured party and its own insurer paid its claim when Canal, the insurer of the negligent party, did not do so. Tri-National is now seeking satisfaction of its judgment against the Yelder defendants from Canal under the MCS-90 endorsement. As the court held in *Global Hawk,* the purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment collectible against negligent authorized carriers. *Global Hawk,* 203 Cal.App.4th at 1466. Here, as

10

in *Global Hawk*, the MCS-90 endorsement is triggered because the underlying insurance policy (to which the endorsement is attached) did not provide liability coverage for the accident, and the Yelder defendants did not have other insurance coverage sufficient to meet the federally mandated minimums. As a result, this Court finds that plaintiff is entitled to payment from Canal under the MCS-90 endorsement to satisfy the judgment against Canal's insureds.

This ruling is consistent with the Tenth Circuit's statement of the law in *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009) adopting the majority view as to the interpretation and application of the MCS-90 endorsement.[6] In *Yeates*, the Court held:

> [W]hen an injured party obtains a negligence judgment against a motor carrier, an insurer's obligation under the MCS-90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) **the carrier's other insurance** coverage is either insufficient to meet the federally-mandated minimums or non-existent. Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply.

584 F.3d at 879 (emphasis added). Like the court in *Global Hawk*, *Yeates* makes it clear that the MCS-90 endorsement is triggered when the **motor carrier** has no other insurance coverage. Indeed, the court in *Global Hawk* quoted this same passage from *Yeates* and relied on it as a basis for its holding. *Global Hawk*, 203 Cal.App.4th at 1466. The Tenth Circuit found that this interpretation and application of the MCS-90

---

[6] While *Yeates* also involved a dispute between the injured party and an insurer for the negligent motor carrier, it is distinguishable from the case at bar to the extent that the injured party had been compensated by another insurer for the negligent motor carrier and was seeking additional compensation under the second motor carrier's MCS-90 endorsement. *Yeates*, 584 F.3d at 871-72. Under those circumstances, unlike this case, the MCS-90 endorsement was not triggered because the motor carrier's other insurance had provided coverage. *Id.* at 888.

11

endorsement satisfies its purpose to (1) protect the public from risks created by motor carriers' operations and (2) ensure the collectability of a judgment against a motor carrier. *Yeates*, 584 F.3d at 875. The court stated that the MCS-90 endorsement acts "as a surety in the event judgment against the carrier is for some reason unsatisfied." *Id.* at 880-81. "[I]f, for example, the carrier fails to maintain insurance (or sufficient insurance) on a truck involved in an accident and fails to pay out of its own pocket for its liability to the injured party, the MCS-90 endorsement's purpose is clearly implicated." *Id.* at 881. This example, contemplated by the court in *Yeates*, is the situation before this Court.

In this case, coverage under the MCS–90 endorsement is in accord with its purpose to ensure that the public is adequately protected from the risks created by a motor carrier's operations and to ensure the collectability of a judgment against the motor carrier. Canal, as the insurer for the motor carrier bears the risk to protect members of the public, like Tri-National, from the negligence of Canal's insured motor carrier where the motor carrier does not have other insurance coverage.

## IV. Conclusion

The MCS-90 endorsement is triggered because the motor carrier's underlying insurance policy did not provide liability coverage for the accident and the motor carrier (the Yelder defendants) did not have other insurance coverage sufficient to meet the federally mandated minimums. As a result, plaintiff is entitled to payment from Canal under the MCS-90 endorsement to satisfy the judgment against Canal's insureds and, therefore, plaintiff is entitled to judgment as a matter of law. For these same reasons, defendant is not entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment (#20) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Canal's motion for summary judgment (#15) is **DENIED.**

**IT IS FINALLY ORDERED** that judgment is entered in favor of plaintiff Tri-National, Inc. A separate Judgment will accompany this Memorandum and Order.

Dated this 7th day of February, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE